```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                      :    04 Civ. 3840 (JSR)
IN RE BISYS SECURITIES LITIGATION     :
                                      :    MEMORANDUM ORDER
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

At a hearing held on January 18, 2007, the parties in the above-captioned consolidated action moved for final certification of a class for settlement purposes and final approval of the class settlement and plan of allocation. In advance of the same hearing, the two law firms who served as co-counsel for the lead plaintiffs jointly applied to the Court for attorneys' fees in the amount of 30% of the $65,870,000 settlement (amounting to a request for $19,762.500 plus interest) and for a reimbursement of litigation expenses in the amount of $798,880.33, a figure subsequently reduced to $516,686.69 in a letter dated January 19, 2007.

No objection whatsoever has been made, orally or in writing, to the class certification or to the term of the settlement. Moreover, after careful review, and for the reasons stated from the bench, see transcript, 1/18/07, the Court finds the class arrangement, class, and plan of allocation, to be fair, reasonable, and adequate in all respects and fully consistent with the strictures of due process and Fed R. Civ. P. 23(a)(3) and 23(b)(3). Accordingly, they are all approved.

Regarding attorneys' fees, an objection was submitted by William Zorn, Esq., which raises several issues that warrant discussion.

First, Zorn contends that the Notice of Class Action Settlement ("Notice") did not provide the class with notice of attorneys' fees sufficient to comply with Rule 23(h), which requires that notice of a motion for fees be "directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h).  Specifically, the Notice did not specify the precise amount of attorneys' fees that lead counsel sought, but stated instead that counsel intended to "apply to the Court to award attorneys fees . . . in an amount not greater than one-third (33%) of the settlement fund and for reimbursement of their expenses."  The actual application for fees was not filed until after the deadline for objections had elapsed.  As a result, no class member was on notice of the actual attorneys' fees requested at the time objections were due.

Nonetheless, members of the class were plainly on notice that the attorneys' fees might be as much as one-third of the fund and so had every reason to raise an objection if they thought this was excessive.  While it might have been a better practice to provide them with more information relevant to evaluation of this request, not a single class member other than Zorn raised any objection – even though the class included numerous institutional investors who presumably had the means, the motive, and the sophistication to raise objections if they thought the one-third maximum fee was excessive, or short of that, if they thought the information given them as to the fees was inadequate.  This in itself is a strong indication that the information about attorneys' fees was presented in a "reasonable

manner." Nor is such a manner of notification unusual in this context. See, e.g., In Re Elec. Carbon Prods. Antitrust Litig., 447 F. Supp. 2d 389, 411 (D.N.J. 2006); Allapattah Servs. V. Exxon Corp., 454 F. Supp. 2d 1185, 1194 (S.D. Fla. 2006); Hicks v. Morgan Stanley & Co., 2005 U.S. Dist. LEXIS 24890, at *10; (S.D.N.Y. 2005). Overall, in the context of this case, the Court finds that there has been adequate compliance with Rule 23(h).

Zorn also objects to the amount of the fee itself, calling it "excessive," and, in any event, the Court has an independent obligation to examine the fee to see if it is reasonable. See Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) ("[A]ttorneys whose efforts created the fund are entitled to a reasonable fee - set by the court - to be taken from the fund.") The question of whether a particular fee is reasonable must be guided by consideration of such factors as "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy." See Goldberger, 209 F.3d at 50(citation omitted). Moreover, a "key consideration required by the PSLRA[1] 'is the result actually achieved for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for

---

[1] Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified in pertinent part at 15 U.S.C. § 78u-4(a)(6)).

3

class members.'" See Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 438 (2d Cir. 2007) (quoting Advisory Comm. Notes to Fed. R. Civ. P. 23, 2003 Amendments).

Consistent with these guidelines, a reasonable attorneys' fee may be calculated using either the percentage method or the lodestar method, though the recent trend in this Circuit has been to use the percentage method.  See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 122 (2d Cir. 2005).  The percentage method, "though not without flaws, is often preferable to the lodestar method to determine attorneys' fees in class actions because it reduces the incentive for counsel to drag the case out [and] fewer judicial resources will be spent in evaluating the fairness of the fee petition."  Hicks v. Morgan Stanley & Co., 2005 U.S. Dist. LEXIS 24890, at *23 (S.D.N.Y. October 24, 2005). The lodestar method remains highly useful, however, as a "cross-check" to further ensure reasonableness.  See Goldberger, 209 F.3d at 50 ("[T]he lodestar remains useful as a baseline even if the percentage method is eventually chosen.").

As already noted, class counsel here requested a fee 30% of the fund, i.e. $19,762.500 plus interest.  As a general matter, "[a] 30% fee [would be] consistent with fees awarded in . . . class action settlements in the Second Circuit."  See Hicks, 2005 U.S. Dist. LEXIS 24890, at *24-25 (collecting cases).

It is true that most such case have involved smaller settlement funds and therefore have not bestowed so large a sum, in absolute terms, on class counsel.  "Obviously, it is not ten times as

4

difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case." Goldberger, 209 F.3d at 52 (quotation marks omitted).  Consequently, in many cases "with recoveries of between $ 50 [million] and $ 75 million, courts have traditionally accounted for these economies of scale by awarding fees in the lower range of about 11% to 19%."  Id. (citing William J. Lynk, The Courts and the Plaintiff's Bar: Awarding the Attorney's Fee in Class-Action Litigation, 23 J. Legal Stud. 185, 202 (1994)).

Nonetheless, in this Court's experience, relatively few cases have involved as high level of risk, as extensive discovery, and, most importantly, as positive a final result for the class members as that obtained in this case.  "The quality of representation is best measured by results . . . calculated by comparing 'the extent of possible recovery with the amount of actual verdict or settlement,'" see Goldberger, 209 F.3d at 55 (quoting Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 118 (3d Cir. 1976)), and an all-cash settlement of over $65 million, plus interest, is a very significant amount for the class members here, who can expect to recover roughly one-third of their damages in the settlement.  By contrast, the more typical recovery rate in class actions is between 5% and 6%.  See In re Rite Aid Corp. Secs. Litig, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001).

The reasonableness of the 30% figure is also confirmed by the resultant lodestar multiplier of 2.99 (calculated by comparing the percentage fee to what the work would have cost if billed at a

5

standard hourly rate[2]), which accurately reflects "the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 468 (S.D.N.Y. 2004).  Such a multiplier falls well within the parameters set in this district and elsewhere.  See Wal-Mart Stores, 396 F.3d at 123 ("[T]he lodestar yields a multiplier of 3.5, which has been deemed reasonable under analogous circumstances."); see also Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.), 243 F.3d 722, 742 (3d Cir. 2001).

Counsel's request for a fee reimbursement in the amount of $516,686.69 for out-of-pocket expenses incurred in connection with this action, as modified, is also approved.  See In re Independent Energy Holdings PLC Securities Litigation, 302 F. Supp.2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.") (internal quotation marks omitted).

In summary, the settlement and plan of allocation are hereby approved.  Counsel is awarded attorneys' fees in the amount of 30% of the settlement amount, i.e., $19,762,500 plus a corresponding share of interest accrued, and litigation expenses in the amount of $516,686.69.

---

[2] Lead Counsel expended a total of 16,632 hours on this case (including the time of attorneys, paralegals, and law clerks), resulting in a lodestar of $6,599,020 (if the time had been billed at rates well within the norm in such cases).  See Joint Declaration of Gene Cauley and Jeffrey H. Squire, Exhibit 4.

6

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       July 11, 2007